Argument not to exceed 15 minutes per side. Mr. Little, you may proceed for the appellate. May it please the court, Dr. Lynn and counsel. My name is Marion Little. The principal issue in this case is whether the phrase, quote, issues from, close quote, as used in the second part of the case. The second amendment to the party's license agreement refers to, A, only a single patent issued directly from a single patent application, or B, does it also include patents included indirectly from a more remote patent or grandparent application? And to put a finer point on this, can that issue be resolved by way of summary judgment? The disposition of that question decides whether or not my client, Dr. Lynn, is entitled to continue receiving royalties through December 7, 2021, or whether the defendant was entitled to stop making payments as of 8-12-2019. Now, the district court adopted the former of those two options, did so in summary judgment concluding that there can only be one meaning from the phrase, issues from, and in doing so, ironically, adopted a position that had been expressly rejected by the parties as part of the negotiation of that second amendment. So let's start off with what we've submitted is the key point in terms of the case law. One is that both parties, as well as the district court, have cited numerous cases. And as numerous cases make one point very clear, the phrase, issues from, has been used in multiple contexts. Sometimes it's used to suggest a patent arising directly from the parent. Other times it is a patent that arises from a continuation patent or a child patent. But it has gone back and forth. And in fact, there is only one case, the federal circuit court's decision in the Cooper matter, that clearly addressed the question of whether issues from has historically been given both meanings. And the federal circuit court said it has, in fact, that same meaning in both contexts. And in fact, if we look through all the cases that are cited in the respective briefs, we can go back 90 years and see that that phrase has different, multiple meanings. And in one case, the Baxter decision from the federal circuit, that phrase was actually used in both senses in one case. So at the very least, you cannot on summary judgment reach the conclusion that that phrase has only one meaning. And I would suggest to you that the real challenge was the way in which the district court approached the analysis. I think his honor approaches as if almost a statutory construction approach. Well, this is a contract case. We know that if it's a contract, you first look to see whether or not the language is plain and ambiguous. If it's ambiguous, you consider extrinsic evidence. What is the type of extrinsic evidence you might consider? You might consider whether that phrase has a specialized meaning in the industry. But by doing so, you've already assumed that it's ambiguous because you've concluded that you've looked at the four corners of the document and you can't answer the question. And then if you're going to consider what that term means as a matter within the industry, you're also going to consider what courts have recognized as probative evidence. So is your argument that if a contract interprets a term of art here, we might say issues from as a term of art, we might come up with something else in some other context. If a court says that the parties incorporated this, everybody in the industry uses this to mean X, that now everything is fair game, parole evidence, everything? And what if we just looked at a dictionary? That's also outside the four corners. Cases have gone both ways, Your Honor. Some courts have said that if you know that it is a term of art that's readily determined, and maybe it's not simply the four corners, but you looked at Black's Law Dictionary to answer that question, then it would not be ambiguous and you would not consider the other extrinsic evidence. Right. So if issues from, I take your point that courts have used issues from to mean a lot of different things. I understand that to be your point. But let's say issues from had a clear meaning in the case law. You would not say that if a court looks to the Federal Circuit's uniform case law on issues from that now parole evidence, everything else is fair game, or would you? I think that would be a different scenario, and I think you could argue in the scenario the courts described there that if it was a consensus among all of the courts as to what that term means, then you would not have to look to the parole evidence or the other extrinsic evidence. But if there's a conflict among the case law, now everything's on the table. It certainly is, Your Honor. And we've cited some Ohio appellate court authority in terms of contract construction that would say that you would at that point in time look to see, including through the use of expert testimony, what that phrase means. Because you could have, as we have here, a dispute as to what this so-called term of art has. And in fact, we've seen in the case law that it is. And the reason I point that out is because if this was an issue of statutory construction, the court would first look to see whether or not it was plain and unambiguous. And if it was ambiguous, there's probably 15, maybe 20 rules of construction this court follows in trying to ascertain the meaning of the legislature. But the court then makes that decision. It's not put to a jury. And in this case, the trial court didn't know what issue from means, so he searched for a definition, much like if he was conducting a statutory analysis. He said, well, the circuit court said, A, I don't agree with the circuit court. Now, if you're doing a statutory construction, that would be a fair analysis. A district court would not have to follow a circuit court decision from outside the Sixth Circuit, could have reached a construction. But here we're simply talking contract. And we're talking contract when he identifies that there is a conflicting construction, one different than what he would adopt, then we necessarily have reached that threshold where it must be ambiguous. And if it's ambiguous then, then it opens the door to consider all the extrinsic evidence put before the trial court. What if we looked at the rest of the contract, though, to discern the meaning of the contract as a whole? Surely that's, I mean, we're allowed to read the whole contract without any resort to ambiguity or canons. You certainly are. And I think when you look at both the original document, the First Amendment and the Second Amendment, that you would not be able to reach the conclusion that it has only the meaning that was ascribed to it by the district court judge. Well, that's the question. I mean, you know, there's a case that my clerk found that I don't think either party cited here called Wilkerson v. American Family Insurance, which is a Sixth Circuit 2021 decision. And it's interpreting Ohio law, which is what we're applying here. But it says, when a phrase can bear two meanings, Ohio courts expand their horizons by looking at the contract as a whole to see if one clear meaning best fits the context. And I think that's what we're bound by. And I guess that's the issue here. I don't think we can just narrowly look at issues from a legal term of art that's per se ambiguous. But we've got to look under Ohio law to the whole context. Is it ambiguous or not ambiguous in the context of this license agreement? I don't disagree with that proposition. We're in agreement that that's the general standard that applies. You just think that Ohio law, even if you look at the context overall, you still think it's ambiguous. That's your position, right? That's right. If you want to understand the context of this agreement, you would start, of course, looking at the original agreement, which did not establish a particular cutoff for the payment of the royalties. Right, but the Second Amendment did. I mean, there's a presumptive cutoff of August 12, 2019. Subject to the exceptions, yes, Your Honor. You're relying on that third exception. Exactly, Your Honor. But it all is going to boil down to, does issue from mean directly? Because if the patent had to issue directly from the 635 application, you concede there was no patent that issued directly from the 635. You do concede that? That's correct, Your Honor. Okay, so your position is, ah, but it was a continuation in part of the 635 application that there was this 968 patent. And from that, you're trying to, that's what you're getting to the December of 2021 cutoff date. And the answer to the court's question? I'm just curious, I mean, not that it matters a lot, but I mean, are we talking about $10 or $10 million in royalties in that year and a half difference between August of 19 and the 2021? Substantial enough to justify a scheme before the Supreme Court. There's a good answer. All right. There's always a month. More than $10. There's always a month. All right, more than $10. But that's, you know, we certainly start with the proposition. You look at the document in its entire four corners. But when you conduct that analysis, you end up exactly where you're at, which is what does issue from mean under that third exception when we're defining what the term is the royalty payments. And if we get to that point, then we know that it has multiple constructions. And if it has multiple constructions, we necessarily then have to turn to all the extrinsic evidence to understand it. And why that's so significant in this particular case, this is teed up initially as a motion to dismiss. The district court sui sponte converts it to a summary judgment, inviting the parties to submit that evidence that's necessary to answer this question. And there is no extrinsic evidence offered by the defendant, the movement on the motion, that would answer this question. In contrast, Dr. Lynn, both through his declaration, and by the way, Dr. Lynn was not just the inventor. He was involved in the actual negotiations of the original license agreement, the First Amendment, and the Second Amendment. There's emails exchanging showing the party's intent as it relates to the drafting of this key language. And then that is supplemented by an affidavit from an expert for the last 30 years practicing patent law that explains what the meaning of this particular passage is within, again, to use the phrase, an industry term. So when we look to see what was the other extrinsic evidence, it's overwhelmingly in support of Dr. Lynn. You can't grant a summary judgment. And I would say that simply from an academic standpoint, you could simply stop with the notion that the cases are all over the place. It's ambiguous. But if you want to go to the next step, the evidence is only one way, and that's our way. Wait, what would we do if we just said this is ambiguous, it's all over the place? We would remand? You would reverse summary judgment because it's ambiguous and remand it to the trial court. I've exhausted my time. I've got it. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Tom Saunders for Becton Dickinson. So I'll address the established legal meaning of issues from, but first I want to stress this is the meaning that's evident from the face of the agreement. So let's talk first just about the four corners of the agreement. To understand the royalty cutoff in Article III, Section 5, it's helpful to start at the beginning and compare it to Article I, Section 1. This is the definition of licensed patents that's quoted on page 36 of our brief. It's page ID 1111 in the record. That definition reflects the understanding that a patent issues from the application that's actually approved from the PTO. Thus, in defining the scope of licensed patents, when the parties wanted to cover other applications like continuations in part, they said so in that definition. In contrast, in the provision we're talking about here, they didn't. They didn't talk about continuations in part and patents that issue therefrom like in Article I, Section 1. Instead, they talked about one particular application and the patents that issue therefrom. So either they're trying to take all that language in Article I, Section 1 and import it into this other provision where it's not written, or they're saying it's all extraneous and there was no need for them to say that in Article I, Section 1. Beyond this sort of conflict of mentioning the continuations in part versus not, if you look at page 11 of our brief where we have the patent chart there, there are a bunch of applications that have been filed before the Second Amendment. Those include the continuation in part on which they are relying, this jump they're trying to make to this other application and the patent they issued from it. It was known at the time. And if the parties had intended to include the patent issuing from that, they would have mentioned that application by number in Article III, Section 5. And I'm not just talking about a general absence here. The published version of that application is mentioned in the Second Amendment by number, the 167 published application, in another provision to say this is not part of the definition of licensed patents. So again, the actual application we're talking about is mentioned in the Second Amendment in one other provision to say BD is not licensing this. It's not interested in this swab pouch technology. It's not mentioned in the issues from provision where we're talking about patents that issued from that. So we don't have to talk about anything outside the face of that one piece of paper to say all of the parties' use is pointing in the same direction and it's the general definition of issues from. Now, if we are to go to the established legal meaning, I respectfully submit the first place we should be going is to the statute itself. We talked about the relevant provisions of the Patent Act, including 35 U.S.C. 151, the title of that section is Issue of Patent. They didn't respond to that at all in their reply brief. And in that section, when it's talking about the issuance of a patent, it's talking about the application singular. 35 U.S.C. 131 talks about the examination of the application and the patent shall issue from that. On top of that, we have this long history of the way that the PTO has interpreted this. No counterexamples on that side. Consistency. And the big difference is unlike the sort of drive-by statements in the background of cases where nothing turned on that language, there's a long history of the Patent and Trademark Office in various contexts doing the proper legal interpretation of issues from it, issues from the examined application. And having that be dispositive in affecting things like the term of the patent, whether it's entitled to a patent term extension, whether entitled to a patent term adjustment. So real-world circumstances where if the patent could be said to... I mean, just to make this more concrete, transitional provision where it says, PTO says, if your patent issued from an application filed before this date, then you're not eligible for this benefit. If their interpretation were right and you could reach back and it could be issuing from everything, including that earlier application, then you'd have an entire generation of patents that shouldn't have been getting those patent term adjustments, shouldn't have been getting the patent term extensions. Also, the example of the term of the patent would have been different. So with all of those, and then when we have this sort of clear statute and what the PTO has said, and then when we turn to the cases, I just can't stress enough the importance to remember that this case involves a continuation in part application. It's not the same application rolled over. It's an application to which they've added new matter. And when you look at all of the cases they've cited, they don't have a single court of appeals case that involves a continuation in part application. They've managed to find five district court cases across 66 years that use the language loosely. Absolutely just mentioning it in background, nothing turned on that use of it. In two of those cases, one of it was the loose use of the language by the magistrate judge, and the district court in reviewing that order uses the language correctly. In another one, it was loose language by district court. You look at what the Federal Circuit did when it reviewed that. It uses issues from correctly. And in four of their cases, there's no actual acknowledgement from the court that it's dealing with a continuation in part application. It's not thinking about this issue of new matter. You wouldn't expect it to. Nothing in the case turned on it. They had to go to the Patent Office records and sort of dig that out and unearth it. So everything we have here is all pointing in the same direction. The disparity between the way that it's used within the agreement, if they wanted to cover what Dr. Lynn says it means to cover, they would have used language like Article I, Section 1. And then when you go to the established legal meaning, you really don't have to look at anything beyond the statute. But on top of that, we have the uniform PTO interpretation. And when you go to the case law, just keep in mind to focus on the continuation in part issue. So your position is that the second amendment to the license agreement had the cutoff date of August 12, 2019 for royalty payments unless an exception applied. And you're saying none of those exceptions apply because no patent was issued directly from the 635 application. Absolutely. Is that your position? Yes. And one important piece of context, just remember here, is they talk a little bit in the briefs about sort of the expectation because we're talking about extending the royalties based on BD's own invention and its own patent. But going into the second amendment, there was already a cutoff in Article III, Section 5. And it was a cutoff based on the then definition of licensed patents, which was limited to Dr. Lynn's own patents. So going into this, there was never a vested right to say as long as BD has its own patent. It was tied at that point to the duration of Dr. Lynn's patent. And the reason that I mention this is because if you were to reach that extrinsic evidence, which you wouldn't, but if you look in that email chain, the discussion is they're getting the list from Dr. Lynn of what patents he thinks he has. Based on that list, this August 2019 date is being set as this is the clear date. It's really the date where they expect his patents to be gone. And so the narrative that's being constructed on the extrinsic evidence about why I never would have given something up, no, they're sort of moving all the provisions around here, but they are ending up in the same place with this narrow exception for this one particular line of patents. And to be clear, issues from the 635 published application, the continuation in part, they specifically address that in the agreement and carve it out of the definition of licensed patents. So we think this is a simple case, and unless the court has further questions. I have a question not on this topic, though. It's on the maybe secondary, second issue, I'll call it, the failure to adjust royalty payments question. So, I mean, I don't know. The district court says Dr. Lynn didn't provide sufficient evidentiary support for his claim, keeping in mind that this is a converted motion to dismiss, converted into summary judgment. It says, well, he didn't identify any changes to the consumer price index, identify the specific amounts of payments he received, or calculate what the royalty adjustments should have been. I mean, he did point to public records, telling us what the year-over-year increase on the, I mean, I feel like the district court is just saying, you didn't provide any evidence, although you gave me all the data, you didn't do the math? Like, really? Well, I think on the do the math, there's no dispute that Dr. Lynn is being paid here. And so he says, I think there's some problem with that payment, that check I'm getting. Yes, he thinks it should be more. Right, but which payments is he talking about? And what, there's no sort of specific facts? But isn't there a time period? I mean, it's a bounded time period during which he thinks he should have gotten more. I don't, I mean, I guess everything after that first amendment. We really don't know which specific payments he's objecting to. But the other thing I'll just emphasize, because you're engaged in de novo review here, is it's important to read his bare allegation in connection with the audit provision. So we submit to you that the audit provision acts as a cutoff here, right? It seems true and correct. He had two years to object by invoking the audit procedure, never did that. So that would be a complete cutoff. That would be an alternative. The district court didn't really raise that, but that would be an alternative ground. So that clear alternative ground to affirm. But also the audit provision, even if it weren't this absolute cutoff, it factors into the factual mix here, right? Because whatever it means, it means that the checks that we sent out to him are deemed to be true and correct. And so in the face of that, he never objects at the time. He never says, I want an audit to somehow correct the math that's being done here. He pleads this for the first time in the first amended complaint. We move to dismiss. He pleads it in the second amended complaint. Just, again, this bare sentence. And then summary judgment, it's still the bare sentence. So again, the backdrop here is these statements are deemed true and correct. And whatever you have to do to create a genuine factual dispute, it can't be that against the backdrop of that, you can just come in and say, no, I didn't get these payments with no other detail whatsoever. And so it's fair in this circumstance for the district court to have said that's too conclusory in this context. But you also have the clear alternative ground on the no audit within two years. Thank you. Thank you, Your Honors. All right, we'll hear rebuttal. Judge Gilman, you asked the question to counsel whether his position was that the patent had to be issued, quote, directly, close quote, from patent 635. The word directly does not appear in that paragraph. I realize that, but that was the finding, the conclusion of the district court, that that's what it meant. That is correct. But what we've pointed out is what counsel has asked this court to do is rewrite the second amendment for them to insert the word directly, even though there is case law to the contrary. They've also said that it's the PTO's position, which I find interesting because you'll recall that the Cooper court specifically considered the PTO's position on this. The PTO had articulated the position it had to be directly, and the Cooper court rejected that. Now, there's also a comment that we've cited no cases where there has been a continuation child that was then served as the basis for this analysis. We know that that is untrue. The Cooper case involved that. The Glaxo case involved that. So each of those statements do not support the position advanced by counsel. But let's think about what was the motivating factors as articulated in the contract, because they've asked you to go back and look at the four corners. The four corners of the agreement at the time this amendment was signed did not establish a date certain for the expiration of the royalty payments. That was something that would operate only after we know whether or not there had been any improvements qualifying as a royalty bearing product as of January 15, 2018. There did not have to be a patent secured for those improvements. It's simply the improvements had to occur prior to January 15, 2008. There was no identification in the record or otherwise a knowledge at the time of the amendment as to whether those improvements had occurred. The point of that is that you could have had a royalty payment obligation that would have continued into a substantial period of time. And what the defendant was seeking here was some type of certainty. Well, Dr. Lynn was willing to give them certainty within reason. The certainty was we're going to establish one benchmark, but we're also carving an exception to that. And they're suggesting, well, that was not a patented license. No one suggested that patent 635 was a licensed patent under the original agreement. That's a red herring. Simply patent 635, and by the way, at the time of the second amendment, they also already knew that there was a child that had been issued, which was the continuation of 649. Those were already in place. Now, to play the rhetorical question, if that was supposed to be excluded, why didn't they exclude it? They didn't exclude it, but they knew it had been issued already at that point in time. So the point of all this is we have all these great arguments about how to resolve this ambiguous language. And they're just arguments until the decision maker resolves them. And the decision maker, when a contract is ambiguous, is not the trial court judge. It's going to be the jury. And that's the error in the analysis because the defendant suggests that all these issues, these readings have to be simply resolved by the judge as if we're resolving a statute. We're simply following the principles under Ohio contract law. And under those principles, the conclusion is this has to go to the jury if it's ambiguous and on its face it is. Thank you. Thank you. All right. Thank you, counsel, for your helpful arguments. And the case is submitted. And we will have the clerk call the next case.